**OUTTEN & GOLDEN LLP**
Michael J. Scimone
Rebecca L. Pattiz
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000

**PARMET PC**
Matthew S. Parmet (*pro hac vice* forthcoming)
3 Riverway, Suite 1910
Houston, TX 77056
Telephone: (713) 999-5228

**GARRISON LEVIN-EPSTEIN**
**FITZGERALD & PIRROTTI, P.C.**
Stephen J. Fitzgerald
Joshua Goodbaum (*pro hac vice* forthcoming)
405 Orange Street
New Haven, CT 06511
Telephone: (203) 777-4425
*Attorneys for Plaintiffs and*
*The Putative Classes and Collective*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JAMIE GREENE, LAMELL ARMOR and FABIAN SAUGAR**, on behalf of themselves and all others similarly situated, | Index No. 22-cv-3300 |
| Plaintiffs, | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| v. | |
| **METROPOLITAN TRANSIT AUTHORITY, LONG ISLAND RAILROAD, METRO-NORTH RAILROAD, STATEN ISLAND RAILWAY, MTA CONSTRUCTION AND DEVELOPMENT, MTA REGIONAL BUS OPERATIONS, MTA BRIDGES AND TUNNELS,** and **NEW YORK CITY TRANSIT AUTHORITY,** | **Jury Trial Demanded** |
| Defendants. | |

Plaintiffs Jamie Greene, Lamell Armor, and Fabian Saugar ("Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, Outten & Golden LLP, Parmet PC, and Garrison Levin-Epstein, Fitzgerald & Pirrotti, P.C., upon personal knowledge as to themselves, and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1. This lawsuit seeks to recover unpaid compensation and compensatory damages stemming from underpayments and late payments of wages made by the Metropolitan Transit Authority and its subsidiaries Long Island Railroad, Metro-North Railroad, Staten Island Railway, MTA Construction and Development, MTA Regional Bus Operations, MTA Bridges and Tunnels, and New York City Transit Authority (collectively, "MTA" or "Defendants"), to their employees.

2. Plaintiffs bring this action to recover unpaid and untimely payment of overtime wages and liquidated damages for themselves and similarly situated MTA employees as a collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA").

3. Plaintiffs also bring this action to recover liquidated damages and interest for unpaid and untimely payment of wages for themselves and similarly situated MTA employees as a Fed. R. Civ. P. 23 class action under the New York Labor Law § 191 ("NYLL").

4. MTA is the largest public transit authority in the country and employs more than 60,000 people in New York and Connecticut.

5. MTA uses the third-party timekeeping and payroll service Kronos. In December 2021, Kronos notified its customers, including MTA, that it had been the victim of a ransomware attack and related outage, affecting all employers that use the service (the "Kronos Outage").

6. During the Kronos Outage, MTA continued to record its employees' time. Despite this, MTA told employees that while it would continue to pay them some of their wages, it would not make other kinds of premium payments, including double time, shift differential, and meal allowances required by the collective bargaining agreements that apply to MTA employees.

7. Although MTA attempted to continue overtime payments for some employees, it did not design effective or workable processes to record overtime hours and payments owed, leading to failures to pay overtime in whole or in part.

8. In early April 2022, four months after the Kronos Outage began, MTA began making back payments of unpaid compensation. These payments have been incomplete. To date, MTA employees have not received all overtime payments owed to them. And MTA failed to pay interest or any other form of compensation for the four-month delay in pay.

9. MTA's failure to pay all overtime wages owed to its employees violates the FLSA and its interpreting regulations, which require that "overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends." 29 C.F.R. § 778.106. New York Labor Law also requires timely payment of all wages due. New York Labor Law § 191.

10. In addition, even before the Kronos Outage, MTA violated FLSA by failing to incorporate shift differentials into the "regular rate" of overtime pay to its employees. *See* 29 C.F.R. § 778.207(b).

11. MTA, which was tracking employee time throughout the Kronos Outage, willfully violated the FLSA through the above practices. MTA failed to make adequate good-faith efforts to comply with the law's requirements both before and during the period of the

Kronos Outage. Separately, MTA has failed (and continues to fail) to properly calculate overtime rates both before and after the Kronos Outage, as a matter of policy. MTA regularly pays shift differentials to employees who work certain hours, but does not incorporate shift differentials into the regular overtime rate when making overtime payments to their employees, as required by law.

## THE PARTIES

*Plaintiffs*

12. At all relevant times, Plaintiffs were nonexempt MTA employees entitled to receive overtime pay for hours worked in excess of 40 hours per workweek.

*Plaintiff Jamie Greene*

13. Jamie Greene has been employed by the Long Island Railroad since 2001, first as a machinist and then as a gang foreman. During the Kronos Outage, he was not paid all wages he was due for his work for MTA.

14. For example, from December 2021 to March 2022, Greene worked night shifts, weekend shifts, and overtime for MTA. Under the terms of his union's collective bargaining agreement with MTA, he was entitled to shift differentials for these shifts, which he was not paid.

15. Greene was also entitled to various supplemental wage payments, including meal allowances, under the terms of his union's collective bargaining agreement with MTA. Greene was not paid these supplements in the week after they were earned, nor in the week following; instead he was paid months afterward.

*Plaintiff Lamell Armor*

16. Lamell Armor has been employed by the Long Island Railroad since 2009, first as

an electrician and then as a gang foreman. During the Kronos Outage, he was not paid all wages he was due for his work for MTA, including wages for overtime hours over 40 in a given workweek.

17. For example, during the week of December 22, 2022, Armor worked substantial overtime for MTA. He was not paid overtime wages for all overtime hours that he worked.

18. Moreover, during that same week, Armor was entitled to various supplemental wage payments under the terms of his union's collective bargaining agreement with MTA. Armor was not paid these supplements in the week after they were earned, nor in the week following; instead he was paid months afterward.

19. Armor has frequently worked evening shifts, for which he was owed a shift differential under the terms of his collective bargaining agreement. However, when Armor worked overtime, his overtime wages did not include this shift differential in the regular rate on which his overtime premiums were calculated. Armor has still not received full overtime compensation due to this underpayment.

*Plaintiff Fabian Saugar*

20. Fabian Saugar has been employed by the Long Island Railroad since 1999, first as a machinist and then as a gang foreman. During the Kronos Outage, he was not paid all wages he was due for his work for MTA, including wages for overtime hours over 40 in a given workweek.

21. For example, during the week of February 24, 2022, Saugar worked substantial overtime for MTA. He was not paid overtime wages for all overtime hours that he worked.

22. Moreover, during that same week, Saugar was entitled to various supplemental wage payments under the terms of his union's collective bargaining agreement with MTA.

Saugar was not paid these supplements in the week after they were earned, nor in the week following; instead he was paid months afterward.

23. Saugar has frequently worked evening and weekend shifts, for which he was owed a shift differential under the terms of his collective bargaining agreement. However, when Saugar worked overtime, his overtime wages did not include this shift differential in the regular rate on which his overtime premiums were calculated. Saugar has still not received full overtime compensation due to this underpayment.

***Defendant MTA***

24. The Metropolitan Transit Authority is a public benefit corporation chartered by the New York State Legislature under the Metropolitan Transportation Authority Act, N.Y. Pub. Auth. Law § 1260 *et seq*.

25. Metropolitan Transit Authority carries out its operations through its subsidiaries, Defendants Long Island Railroad, Metro-North Railroad, Staten Island Railway, MTA Construction and Development, MTA Regional Bus Operations, MTA Bridges and Tunnels, and New York City Transit Authority.

    a. Long Island Railroad operates a commuter rail system running from Manhattan to the eastern tip of Suffolk County on Long Island, New York. It is a wholly-owned subsidiary of Metropolitan Transit Authority.

    b. Metro-North Railroad operates a commuter rail system running between Manhattan and northern New York City suburbs in New York and Connecticut. It is a wholly-owned subsidiary of Metropolitan Transit Authority.

    c. Staten Island Railway operates a rapid transit line in Staten Island, New York.

      It is a wholly-owned subsidiary of Metropolitan Transit Authority.

   d.  MTA Construction and Development is responsible for managing construction and development of major transportation capital projects in the New York City metropolitan area. It is a wholly-owned subsidiary of Metropolitan Transit Authority.

   e.  MTA Regional Bus Operations operates surface transit in New York City. It is a wholly-owned subsidiary of Metropolitan Transit Authority.

   f.  MTA Bridges and Tunnels operates toll bridges and tunnels in the New York City metropolitan area. It is a wholly-owned subsidiary of Metropolitan Transit Authority.

   g.  New York City Transit Authority operates public transportation, including subways and bus services, in New York City. It is a wholly-owned subsidiary of Metropolitan Transit Authority

26.   The MTA Defendants jointly employed Plaintiffs and the members of the class they seek to represent, and/or operated as a single integrated enterprise in employing Plaintiffs and prospective class members.

27.   All MTA Defendants are covered employers within the meaning of the FLSA and NYLL.

28.   MTA's principal place of business is New York, New York.

29.   At all times relevant, Metropolitan Transit Authority and/or its subsidiaries maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including with respect to the compensation, timekeeping, and payroll practices that applied to them.

30. At all times relevant, MTA's annual gross volume of sales made or business done was not less than $500,000.

## JURISDICTION AND VENUE

31. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

32. Plaintiffs' state law claims are so closely related to their FLSA claims that they form part of the same case or controversy under Article III of the United States Constitution.

33. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

34. Venue is proper in the Eastern District of New York, pursuant to 28 U.S.C. § 1391 because Defendants operate there, and a substantial part of the events or omissions giving rise to the claims occurred in this district. Defendants are subject to personal jurisdiction in New York.

## FLSA KRONOS COLLECTIVE ACTION ALLEGATIONS

35. Plaintiffs bring the First Cause of Action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated persons who worked in New York as nonexempt employees of MTA (excluding Staff Analysts and Computer Analysts),[1] who did not receive or were not timely paid overtime wages as a result of the Kronos Outage, and who elect to opt in to this action (the "FLSA Kronos Collective").

36. Defendants are liable under the FLSA for, *inter alia,* failing to promptly pay Plaintiffs and other similarly situated employees all overtime wages.

---

[1] *Milerson v. MTA*, 22-cv-0688 (S.D.N.Y.) pleads FLSA claims on behalf of MTA Staff Analysts and Computer Analysts who did not receive overtime wages as a result of the Kronos Outage.

37. All of the work that Plaintiffs and the members of the FLSA Kronos Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and the FLSA Kronos Collective have performed.

38. As part of their regular business practice, Defendants have intentionally, willfully, and in bad faith engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of FLSA Kronos Collective. This policy and pattern or practice includes, but is not limited to, willfully failing to pay Plaintiffs and the members of the FLSA Kronos Collective overtime wages in a timely fashion as required by law.

39. Defendants are aware or should have been aware that federal law required them to pay Plaintiffs and members of the FLSA Kronos Collective all overtime payments on time.

40. Defendants have failed to make adequate good-faith efforts to comply with the FLSA and their unlawful conduct has been widespread, repeated, and consistent.

41. There are many similarly situated current and former MTA nonexempt employees whose wages were unpaid or untimely paid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

42. Similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

43. Notice should be sent to the FLSA Kronos Collective pursuant to 29 U.S.C. § 216(b).

**FLSA SHIFT DIFFERENTIAL COLLECTIVE ACTION ALLEGATIONS**

44. Plaintiffs bring the Second Cause of Action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated persons who worked in New York as nonexempt employees of MTA, (excluding Staff Analysts and Computer Analysts), who were eligible

to receive shift differentials at any time during their employment within the statute of limitations, who worked overtime in one or more weeks during such employment, and who elect to opt in to this action (the "FLSA Shift Differential Collective").

45. Defendants are liable under the FLSA for, *inter alia,* failing to pay Plaintiffs and other similarly situated employees a correct overtime rate that included shift differentials in the regular rate.

46. Consistent with Defendants' policy and pattern or practice, Plaintiffs and the members of the FLSA Shift Differential Collective were paid an incorrect overtime rate that did not include shift differentials in the regular rate.

47. All of the work that Plaintiffs and the members of the FLSA Shift Differential Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and the FLSA Shift Differential Collective have performed.

48. As part of their regular business practice, Defendants have intentionally, willfully, and in bad faith engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of FLSA Shift Differential Collective.  This policy and pattern or practice includes, but is not limited to, willfully failing to pay Plaintiffs and the members of the FLSA Shift Differential Collective a proper overtime rate that included shift differentials in the regular rate.

49. Defendants are aware or should have been aware that federal law required them to pay Plaintiffs and members of the FLSA Shift Differential Collective an overtime rate that included shift differentials in the regular rate.

50. Defendants have failed to make adequate good-faith efforts to comply with the FLSA and their unlawful conduct has been widespread, repeated, and consistent.

51. There are many similarly situated current and former MTA nonexempt employees who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

52. Similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendants' records.

53. Notice should be sent to the FLSA Shift Differential Collective pursuant to 29 U.S.C. § 216(b).

## NEW YORK CLASS ACTION ALLEGATIONS

54. Plaintiffs bring the Second Cause of Action, a New York Labor Law claim, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of:

> Nonexempt MTA employees (excluding Staff Analysts and Computer Analysts) who live in New York State who did not receive or did not timely receive payment of premium compensation as a result of the Kronos Outage between December 1, 2021, and the date of final judgment in this matter (the "New York Rule 23 Class").

55. Excluded from the New York Rule 23 Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judge(s)' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the New York Rule 23 Class.

56. The members of the New York Rule 23 Class are so numerous that joinder of all members is impracticable. Upon information and belief, a substantial majority of MTA's over 60,000 employees were impacted by the Kronos Outage. Although the precise number of such

persons is not known to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

57. Upon information and belief, the size of the New York Rule 23 Class is at least 40 individuals.

58. Defendants have acted or refused to act on grounds generally applicable to the New York Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the New York Rule 23 Class as a whole.

59. Common questions of law and fact exist as to the New York Rule 23 Class that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

    (a)    whether Defendants violated the New York Labor Law;

    (b)    whether Defendants failed to pay compensation timely, if at all, to the New York Rule 23 Class as required by N.Y. Lab. Law Article 6, § 191 and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142;

    (c)    whether Defendants failed to pay the New York Rule 23 Class proper overtime compensation by failing to include non-discretionary payments, including shift differentials, in calculating the regular rate of pay;

    (a)    whether Defendants failed to timely pay Plaintiffs and the members of the New York Rule 23 Class all wages owed, including double time and meal allowances;

    (d)    whether Defendants' policy of failing to pay Plaintiffs and the New York Rule 23 Class all wages owed on time, if at all, was done willfully or with reckless disregard of the law;

    (e)    Whether Defendants failed to make adequate good-faith efforts to comply with the law;

    (f)    the nature and extent of class-wide injury and the measure of damages for those injuries.

60. The claims of Plaintiffs are typical of the claims of the New York Rule 23 Class

they seek to represent.

61. Plaintiffs and all of the New York Rule 23 Class Members work, or have worked, as employees of Defendants.

62. Plaintiffs and the New York Rule 23 Class Members enjoy the same statutory rights under the NYLL, including to be timely paid all wages for all hours worked. Plaintiffs and the New York Rule 23 Class Members have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL. Plaintiffs and the New York Rule 23 Class Members have all been injured in that they have been undercompensated due to Defendants' common policies, practices, and patterns of conduct.

63. Plaintiffs will fairly and adequately represent and protect the interests of the members of the New York Rule 23 Class. Plaintiffs understand that as class representatives, (1) they assume a fiduciary responsibility to the class to represent its interests fairly and adequately; (2) they must represent and consider the interests of the New York Rule 23 Class just as they would represent and consider their own interests; (3) in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interests over those of the Class; (4) any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the New York Rule 23 Class; and (5) in order to provide adequate representation, they must be informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in their possession, and testify at deposition and/or trial.

64. Plaintiffs have retained counsel competent and experienced in complex class actions and employment litigation. There is no conflict between Plaintiffs and the New York Rule 23 Class Members.

65. A class action is superior to other available methods for the fair and efficient adjudication of this litigation, particularly in the context of wage litigation like the present action, where an individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against an institutional defendant. The members of the New York Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' violations of the NYLL, as well as their common and uniform policies, practices, and procedures. Although the relative damages suffered by individual New York Rule 23 Class Members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. The individual plaintiffs lack the financial resources to conduct a thorough examination of Defendants' payroll and compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages. In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

66. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

### FIRST CAUSE OF ACTION
### Fair Labor Standards Act: Late Payment
### (Brought on behalf of Plaintiffs and the FLSA Kronos Collective)

67. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

68. Defendants have engaged in a widespread pattern and practice of violating the FLSA, as described in this Class and Collective Action Complaint.

69. At all relevant times, Plaintiffs and other similarly situated current and former employees were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

70. At all relevant times, Defendants employed Plaintiffs and the FLSA Kronos Collective.

71. The overtime wage provisions set forth in §§ 201 *et seq.* of the FLSA apply to Defendants.

72. At all relevant times, Defendants have been employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

73. At all relevant times, Plaintiffs and the FLSA Kronos Collective were employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

74. Defendants failed to pay overtime wages on time and in full to Plaintiffs and the members of the FLSA Kronos Collective, in violation of the FLSA.

75. Defendants' violations of the FLSA have been willful and intentional. Defendants failed to make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiffs and other similarly situated current and former employees.

76. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

77. As a result of Defendants' willful violations of the FLSA, Plaintiffs and all other similarly situated employees have suffered damages by being denied prompt payment of overtime wages in accordance with 29 U.S.C. §§ 201 *et seq*.

78. As a result of the unlawful acts of Defendants, Plaintiffs and other similarly situated current and former employees have been denied prompt payment of overtime compensation, in amounts to be determined at trial, and are entitled to liquidated damages, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**Fair Labor Standards Act: Overtime Rate**
**(Brought on behalf of Plaintiffs and the FLSA Shift Differential Collective)**

79. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

80. Defendants have engaged in a widespread pattern and practice of violating the FLSA, as described in this Class and Collective Action Complaint.

81. At all relevant times, Plaintiffs and other similarly situated current and former employees were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

82. At all relevant times, Defendants employed Plaintiffs and the FLSA Shift Differential Collective.

83. The overtime wage provisions set forth in §§ 201 *et seq.* of the FLSA apply to Defendants.

84. At all relevant times, Defendants have been employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

85. At all relevant times, Plaintiffs and the FLSA Shift Differential Collective were employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

86. Defendants failed to pay Plaintiffs and the members of the FLSA Shift Differential Collective a proper overtime rate, including shift differentials in the regular rate, in violation of the FLSA.

87. Defendants' violations of the FLSA have been willful and intentional. Defendants failed to make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiffs and other similarly situated current and former employees.

88. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

89. As a result of Defendants' willful violations of the FLSA, Plaintiffs and all other similarly situated employees have suffered damages by being denied complete payment of overtime wages in accordance with 29 U.S.C. §§ 201 *et seq*.

90. As a result of the unlawful acts of Defendants, Plaintiffs and other similarly situated current and former employees have been denied complete overtime wages, in amounts to be determined at trial, and are entitled to recover from Defendants unpaid wages and liquidated damages, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION
### New York Labor Law: Late Payment
### (Brought on Behalf of Plaintiffs and the New York Rule 23 Class)

91. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

92. Defendants engaged in a widespread pattern, policy, and practice of violating the New York Labor Law, as detailed in this Class and Collective Action Complaint.

93. At all times relevant, Plaintiffs and the members of the New York Rule 23 Class have been employees and Defendants have been employers within the meaning of the New York

Labor Law.

94. Plaintiffs and the members of the New York Rule 23 Class are covered by New York Labor Law and accompanying regulations.

95. Defendants employed Plaintiffs and the members of the New York Rule 23 Class.

96. Defendants violated New York Labor Law, in relevant part, by failing to timely pay Plaintiffs and the members of the New York Rule 23 Class all wages they are owed on time and in full, as required by the New York Labor Law, including New York Labor Law § 191.

97. Defendants' violations of the New York Labor Law have been willful and intentional. Defendants failed to make a good faith effort to comply with the New York Labor Law with respect to their compensation of Plaintiffs and other similarly situated current and former employees.

98. Due to Defendants' violations of the New York Labor Law, Plaintiffs and the members of the New York Rule 23 Class are entitled to recover from Defendants unpaid wages, liquidated damages (including to compensate for the late payment of wages), reasonable attorneys' fees and costs of the action, penalties, and pre-judgment and post-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated persons, seek the following relief:

A. That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all similarly situated MTA employees who presently, or have at any time since December 1, 2021 up through and including the date of this Court's issuance of court-supervised notice, worked for MTA in New York State. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of

their right to join this lawsuit if they were denied proper wages;

  B. Unpaid overtime pay, including shift differentials, and an additional and equal amount as liquidated damages and interest pursuant to the FLSA and the supporting United States Department of Labor regulations;

  C. Liquidated damages and any penalties and other damages as permitted by law pursuant to the NYLL;

  D. Certification of the New York Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

  E. Designation of Plaintiffs as Class Representatives for the New York Class and of Plaintiff's counsel of record as Class Counsel;

  F. Issuance of a declaratory judgment that the practices complained of in this Class and Collective Action Complaint are unlawful;

  G. Pre-judgment interest and post-judgment interest;

  H. Appropriate equitable and injunctive relief to remedy violations, including but not necessarily limited to an order enjoining Defendants from continuing their unlawful practices;

  I. A reasonable service award for Plaintiffs to compensate them for the time and effort they have spent and will spend protecting the interests of other MTA employees, and the risks they are undertaking;

  J. Reasonable attorneys' fees and costs of the action; and

  K. Such other relief as this Court shall deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury in this action.

Dated: June 3, 2022
      New York, New York

Respectfully submitted,

By: _/s/_____

**OUTTEN & GOLDEN LLP**
Michael J. Scimone
Rebecca L. Pattiz
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

**PARMET PC**
Matthew S. Parmet
3 Riverway, Suite 1910
Houston, TX 77056
Telephone: (713) 999-5228

**GARRISON LEVIN-EPSTEIN,
FITZGERALD & PIRROTTI, P.C.**
Stephen J. Fitzgerald
Joshua Goodbaum
405 Orange Street
New Haven, CT 06511
Telephone: 203-777-4425

*Attorneys for Plaintiffs and the Putative Classes and Collective*